**Opinion filed October 30, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00317-CR

_____

## ANDREW FERGUSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR22183**

## M E M O R A N D U M   O P I N I O N

The jury found Andrew Ferguson guilty of the offenses of aggravated robbery and engaging in organized criminal activity. The jury assessed punishment at confinement for twenty-seven years for each offense, to be served concurrently. The trial court sentenced Appellant accordingly. Appellant challenges his conviction in three issues. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for aggravated robbery and engaging in organized criminal activity. In the indictment, the grand jury alleged that Appellant intended to obtain control of property without the effective consent of the owner and, at the same time, intentionally or knowingly placed Winston Camp in fear of imminent bodily injury or death. The grand jury also alleged that Appellant, with the intent to participate in the profits of a combination, committed aggravated robbery. TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2014). Section 29.02(a) of the Texas Penal Code defines robbery as follows: "A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2) (West 2011). The offense becomes aggravated if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2). To prove that Appellant committed the offense of engaging in organized criminal activity, the State must have shown that Appellant (1) intended to participate in the profits of a combination and (2) committed aggravated robbery. *Id.* § 71.02(a)(1).

## II. *Evidence at Trial*

Winston Camp was an employee at the 7-Eleven convenience store on Coggin Avenue in Brownwood when, late one October night, three hooded and masked individuals entered the store armed with what appeared to be real guns. One individual, who wore a black hoodie, entered the store while Camp placed soft drinks in the display refrigerators at the back of the store. That individual, who was later identified at Javonte James, demanded that Camp go to the front of the store and give him money and Newport cigarettes. Camp testified that the first individual had what Camp thought was a dark, nine-millimeter handgun. The second robber, who wore a white or gray hoodie, had a long-barreled revolver in his hand. The second

2

individual, who was more than six feet tall and was the tallest of the three robbers, came around the counter and took the money from Camp as Camp removed it from the cash register.[1] Camp feared for his life when the second robber came around the counter because Camp thought that he would be shot. The third individual, who wore a black hoodie and distinctive white and black shoes, went to the back of the store and took several cans of "Four Lokos" alcoholic energy drinks from the display refrigerators. The third robber, who was later identified as Trevor Norman, had appeared in the store earlier in the evening, wearing the same clothes and distinctive shoes, without his face being covered and had looked up at an in-store camera. Camp said that the first robber was stern when he talked and that all three robbers appeared calm.

Danny Hutchins, a police officer with the Brownwood Municipal Police Department, testified that he was two blocks away from the convenience store when he received a call from dispatch about a robbery. Officer Hutchins searched the immediate area but did not see anyone, so he went to the convenience store and interviewed Camp. Officer Hutchins indicated that, as he spoke to Camp in the parking lot of the store, two women approached. One of the women was Jennifer Morse. The women said that they saw three men run down the alley coming from the convenience store and that they crossed the street in front of their car.[2] Officer Hutchins pointed out that the description of the three men given by the women matched the description of men that often spent time in the front yard of a house three blocks from the convenience store. The house described was Appellant's mother's house. Officer Hutchins indicated that Mitch Slaymaker,

---

[1]Camp testified that he is six feet, two inches tall and that the second robber was a little shorter than he was.

[2]Morse recalled that the men were black, but her friend, Sarah Martinez, testified that she could not recall the men's ethnicity. Martinez remembered that they wore black hoodies.

another officer with the Brownwood Municipal Police Department, detained James and Appellant and had them in the back of his patrol car. In-car cameras recorded James and Appellant. Officer Hutchins also stated that, while James and Appellant were in Officer Slaymaker's patrol car, either James or Appellant stuffed a package of Newport cigarettes into their mouth and tried to eat the package.[3]

Officer Hutchins went to the residence where Appellant and his mother, Kathy Ferguson, lived and interviewed Kathy. When he showed her a picture from the convenience store's security camera of the individual who entered the store before the robbery and looked at the security camera, who was later identified as the third robber, she remarked that it was Appellant's friend, Trevor Norman. Officers searched James's house and recovered several hoodies, distinctive white and black shoes, maroon sweatpants, three BB pellet guns,[4] one or two Four Lokos drinks, and a box of Newport cigarettes. Mona Ellington, who was at James's house, testified that James tried to hide the cigarettes, guns, and Four Lokos. Josha Chamblee corroborated Ellington's testimony.

While Officer Hutchins was at James's house, he saw Norman. Officer Hutchins also saw Appellant at Kathy's house. Officer Hutchins said that Appellant claimed that he knew nothing about the robbery, that he spent the evening with James at Coggin Park, and that he went to James's house to play video games. He said that he was heading to his girlfriend's house after that.[5] Appellant's

---

[3]Officer Slaymaker reported that James was the one who tried to eat the Newport cigarette package.

[4]Officer Hutchins explained that, if someone had been shot in the eye with a pellet from one of the BB guns, it could cause serious bodily injury.

[5]James pleaded guilty to aggravated robbery and engaging in organized criminal activity. He was sentenced to confinement for five years. James said that he committed the robbery with Norman. Norman also pleaded guilty to aggravated robbery and engaging in organized criminal activity. He testified that he had agreed with James to commit the crime; Norman received a sentence of confinement for eight years. At trial, both James and Norman claimed that they could not recall identity of the third robber.

girlfriend, Deveney Mann, testified that Appellant was with her but that he left later in the evening to play video games with James. She also said that Appellant had returned later with money and told her not to tell the police about the money, but she did not think that he was involved in the robbery or that the money was from the robbery.

Joe Aaron Taylor, another officer with the Brownwood Municipal Police Department, interviewed Mann and testified that she became upset and cried when questioned about her knowledge of the robbery and about whether Appellant was involved in the robbery. Mann consented to a search of her apartment, where Officer Taylor found money in the top and bottom of the closet and money on the bed.[6] Mann told Officer Taylor that Appellant had joked about robbing a bank. Officer Taylor also spoke to Appellant, who denied any involvement in the robbery, but Officer Taylor did not think Appellant was being honest.

Officer Slayton responded to the dispatch about the robbery and arrived at the convenience store and spoke to Camp. Camp remarked that the second robber was approximately six feet, one inch. Officer Slayton spoke to Appellant at Appellant's house after the robbery. Appellant told Officer Slayton that he had a fight with his girlfriend and left his house. Appellant claimed that he went to Coggin Park, met James there, and then went to James's house to play video games and that they spent the rest of the evening together. Officer Slayton asked to search Appellant's room, which had a hasp and key padlock on the door. Appellant consented to the search. Appellant said that the money found at Deveney's apartment was from a yard job he did for one of his friends.

Officer Slayton also assisted with the search of James's house. The BB guns recovered in the search appeared to be the same BB guns used in the robbery.

---

[6]The money found totaled $233 with $190 found in the bottom of the closet, a $10 bill found on the bed, and $33 found rolled up in the top of the closet.

Officer Slayton also recovered photographs from the SD card on Appellant's cell phone that depicted Appellant holding a gun that resembled, or was similar to, the gun used in the robbery. According to Officer Slayton, when asked about the long-barreled revolver BB gun, Appellant said that he had shot it, as had others, and would not be surprised if his fingerprints were found on the gun.[7] Officer Slayton interviewed James, who told him that the robbers got about ninety dollars in the robbery and that each participant got thirty dollars. James and Norman both admitted to Officer Slayton that they were two of the robbers. Appellant denied that he was involved in the robbery. According to Officer Slayton, Norman, James, and Appellant were friends and knew each other.

Officer Slaymaker testified that he interviewed Mann at Appellant's house after the robbery and that Appellant and James appeared out of the shadows and were running toward him. Both said they had just come from Coggin Park, which was a fair distance away, but neither James nor Appellant appeared winded. Both Appellant and James identified themselves and, when asked, showed Officer Slaymaker what they had in their pockets: James had thirty dollars and two packages of Newport cigarettes, while Appellant had thirty one dollars and an MP3 player. Officer Slaymaker asked both Appellant and James to ride with him to the convenience store; they agreed to go with him. Camp was not able to say whether James and Appellant were the robbers. Officer Slaymaker, after a review of the evidence, was comfortable with Appellant being charged.

Appellant testified on his own behalf and denied any involvement in the robbery. Appellant watched a movie with Mann from approximately 9:00 p.m. until he left around 11:15 or 11:30 p.m. He admitted that he joked to Mann that "this is a recession, need to rob a bank." Appellant said that he left and walked to his mother's

---

[7]No fingerprint evidence was collected from the BB guns, and no forensic analysis was done.

house, then to Coggin Park where he met James, and then they went to James's house to play video games; the house belonged to James's brother, Donte, who was at the house when they arrived. Appellant said he walked fast and James "speed-walked" to keep up with him. Appellant claimed that James left his brother's house around 12:15 a.m. because he had to do something. After James returned, Appellant and James went to Kathy's house. Appellant said they ran toward Mann, who was in the front yard speaking to Officer Slaymaker, to try to scare her. Appellant denied that he had ever touched the long-barreled revolver BB gun that was found at James's house; he said that the gun, in the photographs of him, belonged to his uncle, Smiley, and that he had touched his uncle's gun. Kathy said that the gun that Appellant had in the photographs belonged to his uncle. Appellant admitted that he told Mann not to tell the police about the money because he was afraid Chamblee or Kathy would ask for money.

### III. *Discussion and Analysis*

Appellant asserts that the State committed a total of ten errors during voir dire and the guilt/innocence phase of trial that amounted to prosecutorial misconduct. In his second issue, Appellant asserts that State's Exhibit Nos. 36 and 37 should not have been admitted into evidence. Appellant also complains, as part of his second issue, that the State withheld exculpatory evidence. Appellant asserts in his third issue that the evidence was insufficient to convict him of aggravated robbery and engaging in organized criminal activity. We will address Appellant's sufficiency issue first and then address his remaining two issues.

### A. *Issue Three: Sufficiency of the Evidence*

We examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v.*

7

*State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the weight and credibility of the evidence, and a reviewing court may not reevaluate the weight and credibility of the evidence so as to substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The reviewing court must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Appellant testified that he was not involved in the robbery, but that he was friends with James. Appellant claimed that either Donte or Chamblee was the other robber, but James and Norman confessed to the robbery. At trial, although James and Norman could not recall the other robber, neither James nor Norman testified that Appellant *was not* the other robber. And just after the robbery, Appellant told police officers that he had been with James the entire evening once they met at Coggin Park. Appellant claimed that he and James went to Donte's house and that James left at 12:15 a.m. and returned twenty minutes later.

Law enforcement investigated the robbery. After several individuals were interviewed, including Kathy, Camp, Mann, Chamblee, James, Norman, and Appellant, Officer Taylor and Officer Slaymaker concluded that Appellant was the second robber, the one in the white or gray hoodie. Appellant argued that the gun in the photographs and the BB gun used in the robbery were different and that he had touched the former but not the latter. However, during his interviews with police, he said that he had shot the long-barreled revolver BB gun. Appellant provided a time line for his whereabouts from 9:00 p.m. forward, but the jury, as the arbiter of the facts, was free to disbelieve him and believe the police officers and other witnesses. Given these facts and others previously outlined, as well as a review of the record, we hold that a rational jury could have found beyond a reasonable doubt

8

that Appellant committed aggravated robbery and engaged in organized criminal activity when he participated in the armed robbery of the convenience store with James and Norman. We overrule Appellant's third issue.

### B. Issue Two: Admission of Evidence

In the "**ISSUES PRESENTED**" portion of Appellant's brief, he sets out his Issue No. Two: "THE INTERVIEW VIDEO OF APPELLANT'S CO-DEFENDANTS SHOULD HAVE NOT BEEN ADMITTED INTO EVIDENCE." In the main body of his brief, Appellant states that his Issue No. Two is: "THE STATE WITHHELD POTENTIALLY EXCULPATORY EVIDENCE." Appellant argues that the State failed to disclose the fact that the gun used in the robbery was not the same gun as shown in the photographs found on the SD card taken from his cell phone; he does not argue that the trial court erred when it admitted certain videos of his codefendants. Nevertheless, we will discuss both complaints as though they had been presented properly.

We review the admission or exclusion of evidence under an abuse of discretion standard, and we will reverse the trial court's decision only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App. 1991) (op. on reh'g). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

Appellant complains that the trial court erroneously admitted videos, State's Exhibit Nos. 36 and 37. But Appellant never objected to the admission of the exhibits. To preserve a complaint for appellate review, a defendant must timely object to the trial court. *See* TEX. R. APP. P. 33.1; *Evans v. State*, No. 11-09-00341-CR, 2011 WL 5994429, at *6 (Tex. App.—Eastland Nov. 30, 2011, pet. ref'd) (mem. op., not designated for publication); *Hajjar v. State*, 176 S.W.3d 554, 559 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Rhoades v. State*, 934 S.W.2d

113, 120 (Tex. Crim. App. 1996)). Appellant has waived this argument on appeal. TEX. R. APP. P. 33.1.

Although not outlined as an issue in the beginning of his brief, Appellant asserts later in his brief that the State never told him that the gun in the photographs found on the SD card of his cell phone was not the long-barreled revolver BB gun that was used in the robbery. Appellant asserts that the State committed a *Brady*[8] violation when the State did not turn over to Appellant the photographs recovered from the SD card found inside his cell phone. *Brady* requires that the State turn over exculpatory information. *Brady*, 373 U.S. at 87; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Appellant testified at trial, as did his mother, that the gun in the photographs was not the same gun that was used in the robbery. Appellant objected to the photographs at trial based on the lack of a proper foundation or predicate and on Rule 404 of the Texas Rules of Evidence. TEX. R. EVID. 404. Appellant did not allege a *Brady* violation at trial. Appellant must satisfy three requirements to establish a *Brady* violation: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). Information that is not exculpatory is not covered by *Brady*. *Id.*

Appellant's counsel acknowledged, in writing, that the Brown County District Attorney's office had an "open file" policy and that a defense attorney could make an appointment to review the prosecutor's file, including exhibits. This generally satisfies the duty to disclose exculpatory evidence. *Id.* at 407. In order to preserve an alleged *Brady* violation, a defendant must object and make the trial court aware of the complaint as soon as the objection becomes apparent. *See Pena v. State*, 353 S.W.3d 797, 808 (Tex. Crim. App. 2011). Appellant made no *Brady* objection at

---

[8]*Brady v. Maryland*, 373 U.S. 83 (1963).

trial and has waived this issue. Even if he had preserved error, the photographs, of Appellant with a gun and on Appellant's SD card in his cell phone, of which Appellant was aware, did not contain exculpatory evidence. *See Havard v. State*, 800 S.W.2d 195, 204 (Tex. Crim. App. 1989). Appellant's second issue is overruled.

### C. Issue One: Alleged Prosecutorial Misconduct

Appellant alleged that two actions by the State during voir dire and another eight actions by the State during the guilt/innocence phase of trial amounted to prosecutorial misconduct. Appellant objected to some, based on evidentiary rules, but he never made an objection at trial on the basis of prosecutorial misconduct, never requested an instruction, and never moved for a mistrial. In order to preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection, (2) request an instruction that the jury disregard the matter improperly placed before the jury, and (3) move for a mistrial. *Hajjar*, 176 S.W.3d at 566. In addition, a party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). As a result, Appellant has waived any argument on appeal of prosecutorial misconduct. We overrule Appellant's first issue.

### IV. *Conclusion*

We hold that the evidence was sufficient to convict Appellant of aggravated robbery and engaging in organized criminal activity. Appellant waived his argument that the trial court abused its discretion by admitting State's Exhibit Nos. 36 and 37 into evidence because Appellant never objected to the admission of the exhibits. Appellant also waived his complaint about the photographs from his cell phone, but even if he had preserved error, the photographs from his cell phone did not contain exculpatory evidence. Finally, Appellant waived his argument of prosecutorial

misconduct because he never made that objection or claim at trial. We overrule all of Appellant's issues.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


October 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.